## LOAN AND EXCHANGE BANK v. MILLER.

1. FINDINGS OF FACT by the Circuit Judge from written testimony, supported by the weight of the evidence, approved.

2. IBID.—Findings of fact by the Circuit Judge from written testimony, not manifestly against the weight of the evidence, approved.

3. USURY—PLEA—INTEREST.—Where a complaint demands judgment for an overdraft, and interest thereon at eight per cent., the court should give judgment for the debt and seven per cent. interest, there having been no plea of usury, no counter-claim for forfeiture under the usury act, and an agreement in writing to pay interest on the overdrafts, but not eight per cent.

4. IBID.—IBID.—CASE CRITICISED.—Usury is not available as a defence unless pleaded. *Ex parte* Monteith, 1 S. C., 231, recognized and followed.

5. EVIDENCE—BOOKS OF ENTRY.—In proving disputed items on a bank account, the bank produced checks, deposit slips &c., and the clerks of the bank proved their agreement with the entries on the books of the bank lying open before them, and they were fully cross-examined as to these entries. The master and Circuit Judge concurred in finding that these charges were proved. *Held*, that an exception alleging that the books of the bank were not in evidence, and no proof made of these entries, must be overruled.

6. INTEREST—CREDITS—COMPOUNDING.—Where interest is charged at the end of every month on the average overdraft for the month, but such interest charges were always less than the monthly credits by deposits, the deposits extinguished the interest charge, and there was no compounding.

7. INTEREST—CUSTOM—WRITTEN AGREEMENT.—Where parties accept the custom of banks to charge eight per cent. interest on overdrafts, and close their account, including such charges, by giving their note, the note will be received as an agreement in writing, sufficient, under the law, to bind the maker to pay the amount stated.

8. IBID.—IBID.—IBID.—But where no note is given, the bank cannot collect exceeding seven per cent. interest on overdrafts, as no custom of a bank can contravene the law which forbids the collection of a greater rate of interest than seven per cent., except where there is an agreement in writing to pay eight.

9. NOTES—PAYMENT—BOOK ENTRIES.—Where a note held by a bank was charged to the account of the maker before its maturity, but was not, in fact, then paid, this mere entry did not prove payment at that date. And the said entry having been corrected by corresponding credit, and the note recharged at maturity, there was no double charge.

10. REFERENCE—SCOPE—REPORT.—An action was brought on three notes

given in part settlement of an account, and for the balance of the account after said notes were credited. Before answer made, the parties agreed to compare their accounts, and transfer all differences to a reconcilement sheet for litigation, which was done. Then answer was made, denying the indebtedness as alleged in the complaint, and it was referred to the master to take the testimony and state the accounts in all matters at issue between the parties. The master took testimony as to the items on the reconcilement sheet, and made report of the whole indebtedness. *Held*, that the master did not exceed the terms of the order of reference.

11. NOTES—PAYMENT.—Notes given by cotton factors to their bank, on the bank's demand, at the close of the cotton buying season, for an amount sufficient to extinguish their overdraft and leave a small balance to their credit, held to have operated as a settlement of the open account.

12. IBID.—CONSIDERATION.—Notes given on the consideration of an overdraft account, and in part payment, are based upon a valuable consideration.

13. AN ARITHMETICAL ERROR made by the Circuit Judge in his decree corrected.

14. EVIDENCE—CHANGED PAPERS.—Defendants having by agreement compared a statement from their books with the books of the plaintiff bank, checked off all corresponding items, and transferred all items of disagreement to a reconcilement sheet for judicial investigation and determination, afterwards put this statement into the hands of an expert accountant, who changed many items and totals on its 240 pages, and made errors in addition, footing up over $11,000, so far as these errors were discovered. *Held*, that when this statement was offered by defendants at the trial to show the totals of debits and credits to which the proven items on the reconcilement sheet should be added so as to obtain the true balance, there was no error in rejecting it as unreliable in its present shape, and in accepting the totals as agreed upon by the accountants at the time of the comparison.

15. REFERENCE—CONTINUANCE.—The plaintiff not having contributed to this result, a continuance of the case, to enable defendants to correct the changes and errors incorporated into their statement, was properly refused, no harm being shown to have been done to defendants by the refusal of a continuance.

Before IZLAR, J., Richland, April, 1892.

This was an action by the Loan and Exchange Bank of Columbia against Jasper Miller, Noah J. Miller, Charles W. Miller and George Miller, as Miller Brothers, Mrs. Catherine McCarter, and the Atlanta and Charlotte Air Line Railway Company, commenced July 10, 1891. The case came up to this court on the following exceptions:

1. Because the presiding judge erred in finding as a matter of fact in his decree that the bonds and stocks mentioned in the sixth paragraph of the complaint were pledged by the defendants, Miller Brothers, as collateral security for the indebtedness to the plaintiff bank, and as matter of law in ordering and adjudging that said bonds and stocks should be sold by the said plaintiff after due advertisement of not less than fifteen days at public auction for cash, and the proceeds arising therefrom be applied to the indebtedness found by the presiding judge in his decree to be due by the defendants, Miller Brothers, to the said plaintiff.

2. Because the presiding judge erred in finding as a matter of fact that Miller Brothers have not applied to their indebtedness to the plaintiff bank the proceeds arising from the sale of cotton, as required by the terms of their chattel mortgage to the plaintiff bank.

3. Because the presiding judge erred in his decree in sustaining the exception of the plaintiff to the master's report, wherein error was alleged in the master's refusal to allow the plaintiff interest at seven per cent. on all overdrafts after June 9th, 1890, and the resulting error therefrom of three hundred and eleven and 25-100 dollars too little in the balance found due by the defendants to the plaintiff on the overdraft account.

4. Because the presiding judge erred in his decree in holding that the question of usury could not be raised and considered in this case unless the same was pleaded; whereas the answer sufficiently put in issue any illegal charge.

5. Because the presiding judge erred, after holding that usury could not be set up in this case because the same was not pleaded, and although the master had found as a matter of fact that the usury had been charged, in not allowing or giving an opportunity to said defendants to amend their answer so as to plead usury, and in so doing he deprived the defendants of a substantial right, and of which they were not cognizant until said usurious charges were brought to light in accounting before the master.

6. Because the presiding judge erred in his decree in overruling the 1st exception of the defendants to the master's report,

21—39

which was as follows: "That the master erred in holding that the items claimed by the bank on the reconcilement sheet under the head of 'We charge' were proved by competent and sufficient evidence; and in holding that the evidence of Mr. Walker, cashier, and Mr. Cronenberg, bookkeeper, was sufficient evidence to prove the said items without the introduction into evidence of the books of the bank.

7. Because the presiding judge erred in overruling the 2d exception of the defendants to the master's report, which was as follows: "That the master erred in not holding that the evidence of the said cashier and said bookkeeper amounted to a mere identification of the said items on the books of the said bank, from which the said cashier and the said bookkeeper read, and did not constitute proof of the said item."

8. Because the presiding judge erred in his decree in overruling the 3d exception of the defendants to the master's report, which was as follows: "That the master erred in finding that interest on interest upon overdrafts was not charged by the said bank, and that the charges of interest upon overdrafts were not compounded monthly or at shorter periods by the said bank."

9. Because the presiding judge overruled the defendants' 4th exception to the master's report, which was as follows: "That the master erred in not holding that the said interest on overdrafts at the rate of eight and ten per cent. per annum and compounded monthly, as aforesaid, was usurious and void."

10. Because the presiding judge erred in overruling the 5th exception of defendants to the master's report, which was as follows: "That the master erred in finding that the balance claimed by the said bank in September, 1889, and in June, 1890, respectively, embraced the said charges of interest on overdraft."

11. Because the presiding judge erred in overruling the defendants' 6th exception to the master's report, which was as follows: "That the master erred in finding that the defendants acknowledged and ratified in writing the alleged agreement to pay the rates of interest in excess of seven per centum per annum by the giving of promissory notes, notwithstanding the fact that the said notes, alleged to have been given for the

purpose of stating and settling the said account on the 9th of June, 1890, are not in evidence, and there is no evidence that the said notes bore upon their face an agreement to pay more than the legal rate of interest."

12. Because the presiding judge erred in overruling the defendants' 8th exception to the master's report, which was as follows: "That the master erred in finding that the amount of interest charged on overdraft by the plaintiff has not been received or paid as interest by the said plaintiff."

13. Because the presiding judge erred in overruling the defendants' 9th exception to the master's report, which was as follows: "That the master erred in his conclusion that, as matter of law, the defendants are not entitled to double the amount of excess of interest on overdrafts above the legal rate."

14. Because the presiding judge erred in overruling the defendants' 10th exception to the master's report, which was as follows: "That the master erred in holding that the charges of interest on overdrafts which appear on Exhibit 'Q,' and embraced in the first charge, under the head of 'We charge,' on 'Reconcilement Sheet,' of $6,760.36, amounting to the sum of $4,645.16, should be allowed; whereas the said charges of interest on overdrafts are usurious, in that the amounts of interest on overdraft were charged by the plaintiff at the rate of eight and ten per centum per annum without a written agreement, and were compounded monthly."

15. Because the presiding judge erred in overruling the defendants' 11th exception to the master's report, which was as follows: "That the master erred in finding that the various small items objected to upon the statement marked Exhibit 'Q' are established by the proof."

16. Because the presiding judge erred in overruling the defendants' 12th exception to the master's report, which was as follows: "That the master erred in finding that the following items on said Exhibit 'Q' should be allowed the plaintiff, that is to say:" * *

17. Because the presiding judge erred in overruling defendants' 13th exception to the master's report, which was as follows: "That the master erred in finding that the following

items of account on the reconcilement sheet, under the head of 'We charge,' were sufficiently proved, and in holding that they were proper charges made by the plaintiff against the defendants, that is to say:"   *   *

18. Because the presiding judge erred in overruling defendants' 16th exception to the master's report, which was as follows: "That the master erred in holding that the note of the defendants for ten thousand dollars, due and payable on the 9th day of November, 1890, was not paid on the 19th day of September, 1890, by the plaintiff charging the said note to the defendants on the books of the said bank."

19. Because the presiding judge erred in overruling defendants' 17th exception to the master's report, which was as follows: "That if the said note set forth in the 16th exception herein was charged to defendants' account on the 9th day of November, as is found by the master, the master erred in not holding that there was a double charge of the said note made by the said plaintiff against the defendants, and in holding that the charge of the said note on the said 19th day of December, 1890, although erroneous, did not affect the balance of the account."

20. Because the presiding judge erred in not finding as a matter of fact that, as set out in the answer and reported by the master, after the service of the summons and complaint in this case, the defendants moved for a bill of particulars of the transactions involved in the whole period of time the account covered, and that the plaintiff conceded that the defendants were entitled to a bill of particulars from the 31st May, 1890, and that the plaintiff declined to furnish a bill of particulars for the period anterior to that date, upon the ground that the account had been stated and settled by notes on the 9th of June, 1890, and that the defendants contended that they were entitled to a bill of particulars covering the entire period, beginning in November, 1887; and that at this juncture counsel for plaintiff and counsel for defendant entered into an agreement that a statement of the account, taken from the books of the firm, should be compared with the account on the books of the plaintiff; and that all items of difference on the books of the

parties should be reconciled amicably, if possible, and that if such adjustment could not be made, then the items of difference should be submitted to the court for litigation, together with all other issues joined under the pleadings, and that the account should be stated between the parties under the order and direction of the court; and that if he had so found, he should have further found that the parties thereto were bound by said agreement, and that the accounting, proof and evidence should have been confined by the master to the items transferred to the reconcilement sheet, and to such other facts in issue as were made by the pleadings, outside of the accounting.

21. Because the presiding judge erred in overruling defendants' 21st exception, which was as follows: "That in stating the account between the plaintiff and the defendants, the master erred in disregarding the agreement entered into between the parties as to the manner of ascertaining the account, and in refusing to consider the statement 'A O,' together with the 'Reconcilement Sheet,' as constituting the only basis of the accounting; whereas the alleged alterations of the statement 'A O,' if material, should have been corrected, and the accounting should have been had in accordance with the understanding and agreement of the parties adhered to throughout the case, and in the absence of which the proof is wholly insufficient to authorize a fair and just accounting between the parties."

22. Because the presiding judge erred in not recommitting the report to the master to make an accounting upon the basis of the agreement between the parties.

23. Because the presiding judge erred in overruling defendants' 7th exception and in sustaining the finding of the master that the account of the said bank against the defendants was stated and settled on the 9th day of June, 1890, by the giving of two promissory notes for $10,000 and $6,000 respectively; whereas he should have found as a matter of fact that said notes were not given in settlement, but as mere memoranda of the account of the defendants on the books of the plaintiff.

24. That the presiding judge erred in overruling defendants' 18th exception, which was as follows: "That the master erred in finding that the three notes given by defendants to the plain-

tiff for ten thousand dollars each, one on the 15th day of September, 1890, and two on the 28th day of October, 1890, were given for a *bona fide* consideration, and in admission, acknowledgment and in part settlement of the balance claimed by the bank to be due; in that the master exceeded the power given him under the order of the referee, which was to state the account between the parties, and take and report all the testimony to the court."

25. That the presiding judge erred in overruling defendants' 19th exception, which was as follows: "That the master exceeded the scope and order of reference in finding and reporting that the amount due plaintiff by defendants on the three notes sued on for principal and interest to date of his report is thirty-two thousand six hundred and thirty-three 30–100 dollars; and if it be held that in this respect the scope of the order of reference has not been exceeded, then the master erred in finding any amount whatever to be actually due and payable to the plaintiff."

26. That the presiding judge erred in overruling defendants' 20th exception, which was as follows: "That the master erred in finding that there is due by the defendants to the plaintiff, by way of overdraft, the sum of two thousand and fourteen 47-100 dollars, in that having refused to take into consideration the statement checked off with the books of the plaintiff and the reconcilement sheet as the basis of stating the account, there is no evidence tending to show that the amount reported by him as the balance due on overdraft is the true amount, or that any amount is due upon such an account."

27. Because the presiding judge erred in disregarding the agreement of the parties as to the matters in dispute upon which the testimony should be taken and the account stated, and in not determining from such agreement and the evidence what was the indebtedness, if any, of the defendants to the plaintiff.

28. Because the presiding judge erred in overruling defendants' 14th exception, which was as follows: "That the master erred in holding that the statement marked 'A O,' taken from the books of the defendants and checked with the books of the plaintiff under the agreement set forth in the answer herein,

is unreliable; and that he further erred in not taking into consideration the said statement in stating the account between the parties to this action."

29. Because the presiding judge erred in overruling defendants' 15th exception, which was as follows: "That the master erred in not accepting and acting upon the proposition made by the defendants, who offered to produce their books and vouchers, and restore the said statement to the same condition as when checked in August, 1891, with the books of the plaintiff; especially when it was clearly apparent from the evidence that the few changes in the items of the said statement were made by the expert employed by the defendants to facilitate the arrival at a just balance of the account between the parties, and made by the said expert under a misunderstanding of his duties."

30. Because the presiding judge erred in finding that any amount whatsoever was due by defendants to plaintiff.

*Messrs. Melton & Melton* and *Abney & Thomas*, for appellants.

*Messrs. A. J. Green* and *R. W. Shand*, contra.

April 19, 1893. The opinion of the court was delivered by

MR. JUSTICE POPE. Jasper Miller, Noah J. Miller, Charles W. Miller and George F. Miller, composing the firm of Miller Brothers, being indebted to the Loan and Exchange Bank of South Carolina, a bank duly incorporated and organized under the laws of this State, and such firm being desirous of establishing a line of credit with said bank to enable them to prosecute their business as cotton buyers, on the 23d day of November, 1887, executed their bond in the penal sum of fifty thousand dollars unto the said bank, conditioned that the aforesaid partners "shall and do well and truly pay or cause to be paid to the said bank, upon demand, any and all indebtedness from said partners to said bank now existing or hereafter to exist by overdraft, and shall and truly pay or cause to be paid unto the said bank any and all other indebtenness from said partners to said bank now existing or hereafter to exist, whenever the same shall from time to time become due and payable, without

fraud or further delay, then the obligation to be void, or else to remain of full effect." And to secure said bond the said partners executed unto the bank their deeds by way of mortgage, whereby they conveyed to the said bank certain real and personal property in the city of Columbia owned by said partners, and in addition thereto the said Jasper and Noah J. Miller executed unto the said bank their deed by way of mortgage of certain real estate in the city of Columbia and city of Spartanburg, to secure said bond. All these papers were duly recorded. It may be well to notice that amongst the terms of the chattel mortgage was one by which the partners sold, "also all cotton in bales now owned by us or hereafter to be acquired by us in the course of our business, and now being or hereafter to be in our said warehouse, or on the platforms, or in warehouses of railroad companies, in or near said city of Columbia, or at the cotton compress in said city or elsewhere. * * * And it is agreed by and between the parties to these presents that nothing herein contained shall prevent the said Miller Brothers from selling the said cotton in the regular course of their business, provided the proceeds of sale are promptly applied to the payment of the aforesaid indebtedness existing at the time of sale."

On the 16th December, 1890, Miller Brothers reported to the bank that they held 505 bales of cotton. In February, 1891, Miller Brothers transferred to the bank certain bonds and stocks. In March, 1891, Miller Brothers transferred to the bank certain other stocks. In the early months of 1890, Miller Brothers, while their account with the bank was $16,000, had discounted their notes for $16,000—one note for $6,000 and one for $10,000. The note for $6,000 was paid at maturity, and in September, 1890, the note for $10,000 was renewed and paid at maturity. In September (15th) and in October (28th) three notes for $10,000 each were discounted for Miller Brothers by the bank. The net proceeds of said notes when discounted were not drawn out of the bank.

A contention arose in 1891 between the bank and Miller Brothers as to their account. The result of this contention was strained relations between the parties, and on the 10th July, 1891, the bank began an action against the firm of Miller

Brothers, wherein they alleged that the firm was due and owing the bank $30,000, the aggregate of the three notes for $10,000 each, and an account for overdrafts for $2,533.93, alleging all the foregoing facts in their complaint. The prayer of the complaint was as follows: "Wherefore, plaintiff demands judgment for the sum of thirty thousand dollars, with interest at eight per cent. per annum on two[1] thousand from the 3d of March, 1891; on ten thousand from 18th March, 1891; on two[1] thousand from 31st of March, 1891; and for two thousand five hundred and thirty-three 93–100 dollars ($2,533.93), with interest from the 1st July, 1891; and that the defendants, and all persons claiming by, through or under them, be foreclosed and barred of all equity of redemption in and to the mortgaged premises. *Second.* That the mortgaged premises, personal property covered by the said chattel mortgages, bonds and stocks pledged, be sold under the order of the court and the proceeds be applied in liquidation of the costs and expenses of this action and of plaintiff's demands, with interest thereon to day of payment, and that plaintiffs have judgment against the defendants, the Miller Brothers, for any deficiency that may remain after such application. *Third.* In the meantime and until a sale, a receiver should be appointed to take charge of the personal property covered by the chattel mortgage, and that the defendants be required to account for, and deliver to such receiver, the same. *Fourth.* For such other and further relief, &c. Copies of the bond and mortgages accompanied the complaint.

The defendants demanded a bill of particulars of the bank beginning on the 23d November, 1887, and extending to the date of filing the complaint. The bank only admitted their right to a bill of particulars of such account beginning on the 31st May, 1890, and ending on the 10th July, 1891, claiming that Miller Brothers had closed their account at that date (31st May, 1890,) by note. An agreement was entered into by the plaintiff and defendants as follows: "That a statement of the account, taken from the books of the firm, should be compared with the account on the books of the plaintiff (the bank), and

---

[1]So printed in the "Case," but "ten" in the original complaint.—REPORTER.

22—39

that all items of difference should be reconciled amicably, if possible; and that if such adjustment could not be made, then the items of difference should be submitted to the court for litigation, together with the other issues joined under the pleadings, and the account should be stated between the parties under its order and direction." Mr. McCants, an expert accountant, prepared a statement of the account from the books of the firm, and he with this statement with an officer of the bank went patiently and carefully over the books of the bank. When the items agreed, they were checked off on each account; when they could not be made to agree, each of such disagreed items was entered on what has been and is now known as the "Reconcilement Sheet."

In December, after this "Reconcilement Sheet" was prepared, the defendants answered the complaint. The answer admits the corporate character of the plaintiff; that the defendants compose the firm of Miller Brothers; that they signed the bond and the mortgages as stated in the complaint; that they transferred all bonds and stocks, except the shares in the Congaree Construction Company; that they made the three notes each for $10,000; that their dealings with the bank were large; that the notice as to the 505 bales of cotton being on hand was given by them to the bank. But in the first defence they deny that they are indebted to the bank, but insist that not only is their account paid, but that the bank is indebted to them. The issues as made by the answer are:

First. That while admitting that the railroad bonds and township bonds were assigned to the bank in February, 1891, to protect their general account there, yet that the shares in the Miller Batting and Manufacturing Company and the Columbia Heights Land and Improvement Company were pledged to said bank not to protect their general account with said bank, but that the consideration of such assignment was a positive stipulation to them by the bank that such bank would extend a sufficient and ample line of credit to enable them to carry on their business, the firm alleging that after the bank acquired such securities it refused to comply with such engagement, in violation of the rights of the firm, and against their protest

and demand have retained such securities, greatly to their damage.

Second. That the certificate of shares of stock of the Congaree Manufacturing Company owned by the firm have never been assigned to the bank, but are in the hands of the bank simply because the officers of such manufacturing company are the officers of the bank.

Third. That the report of the firm, made on the 16th December, 1890, that such firm held 505 bales of cotton, the proceeds of the sale of which, when made by the firm, would be covered into the bank on their account, was true, and the firm claims that such proceeds have been paid to the bank.

Fourth. That while the firm did continue from the 16th December, 1890, to about the 1st of March, 1891, to buy cotton, paying for the same by drafts upon the bank, yet that during that time the firm paid to the bank $54,583.63, and only drew therefrom $43,681.02.

Fifth. That the books of the firm and the books of the bank, when examined by an accountant on each side (irrespective of the amounts of difference between the firm and the bank, which difference was entered on the "Reconcilement Sheet"), showed that the firm had paid to the bank $2,223,678.46, and the firm had only drawn from the bank the sum of $2,199,044.64, leaving a balance to the credit of the firm of $24,633.82. That the firm believe, when the items on the "Reconcilement Sheet" are adjusted, there will still remain to their credit $27,749.15.

Sixth. That the firm while admitting the making of the three promissory notes each for $10,000, yet they insist that the amounts evidenced by the said notes were amounts advanced by the bank in pursuance of the contract made on the 23d day of November, 1887, and are mere memoranda of said account of the firm with the bank, and are without valuable consideration. But the firm insist that these notes were executed by them under duress as follows: that the cotton season for 1890-1891 had already begun, and the firm had made contracts for the delivery of cotton to parties in Europe and this country in large amounts, and that to perform their contracts the firm needed large advances of money, and that under these circum-

stances, and with a full knowledge thereof by the bank, the bank refused to advance the money therefor unless the firm would make these notes; and under the pressure of such duress the notes were made by the firm, as they believe and so charge, for the sole purpose by the bank of exacting from the firm the payment of the discount of such notes, amounting to over $1,000.

Seventh. The firm charges that no account has ever been rendered by the bank to the firm, and that such account on the books of the bank is full of illegal and fraudulent charges, under-credits and omissions.

By agreement of the parties, it was referred to J. T. Seibels, Esq., as master, "to take the testimony and state the accounts on all matters at issue between the parties in the above stated cause, and make report" (on) "the same to this court." The testimony taken by the master covers two hundred and forty-six printed pages. By his report, he does not undertake to do more than pass upon the issues between the parties as involved in the matter of the account. He found, as matters of fact, that the parties from time to time, up to and including the 28th October, 1890, regarded the notes as made by Miller Brothers, and by them delivered to the bank, to be a settlement of the running account of the firm with the bank, and, therefore, he regarded the three notes set up in the complaint as subsisting evidences of indebtedness due by the firm to the bank, and as covering, so far as their face value, that much of their indebtedness to the bank; and that the difference between the face value of the three notes and the aggregate of the running account on the books of the bank, was the amount to be claimed by the bank as an account against the firm. To make our apprehension of the finding of the master practical, we will state that he found that the firm owed the bank for three notes for ten thousand dollars each, maturing, respectively, 3d March, 1891, 15th March, 1891, and 31st March, 1891, and also a balance on account for $2,014.47. In reaching these findings, he considered and decided that the firm had had furnished to them, on their pass books posted by the bank at the end of each month, the balances due by them to the bank at the end of each month, and that such monthly balances included all

charges for interest, exchange, and discount; that when the firm made their notes to the bank, such notes approximately represented and included the amounts due by the firm to the bank at their respective dates; that wherever the notes had been paid, or still remained unpaid, they included, as far as their face value was concerned, a settlement upon an account stated between the parties, and, therefore, in the absence of any fraud or misrepresentation or concealment practiced by the bank on the firm, the parties could not go behind those notes; that if, in the course of business between the firm and the bank, the latter had charged interest beyond the legal rate in the absence of any written agreement made contemporaneously with the advances from the bank to the firm, such notes became the written agreement of the parties for the payment of such excess of interest over and beyond seven per cent. But the master held that as to the balance on account as claimed by the bank against the firm, that in the absence of an agreement in writing for any interest beyond seven per cent., as to such balance, that nothing but seven per cent. could be charged, and he, therefore, reduced the balance claimed by the bank against the firm. He found that the bank was entitled to a judgment against the firm, on the 21st April, 1892, for $32,633.30 on the three notes, and the further sum of $2,014.47 on open account.

Both the firm and the bank excepted to this report, and when the exceptions came on to be heard before Judge Izlar, he sustained the master's report, except that he allowed the bank on its claim on open account to add to the amount as found by the master the sum of $311.28. But, strange to say, with no exceptions from the plaintiff as to amount found due by the master on the three notes, the Circuit Judge increased the master's finding from $32,633.30 to $35,833.30, there being only an interval of four months and two days from the filing of the report of the master to the date of the decree of the Circuit Judge.

Of the issues not within the scope of the reference to the master, the Circuit Judge found as facts: 1. That the bonds and stocks that had been pledged by the firm to the bank were

pledged to secure their general indebtedness to the bank. 2. That the firm had not applied the proceeds arising from sales of cotton, as required by the terms of their chattel mortgage, but this finding did not include the batting mill cotton bats, linters, mattresses and other cotton of inferior grades not in bales. 3. That Catharine McCarter had a prior lien to the bank upon the warehouse property included in the mortgage of the firm to the bank to the extent of $4,000, with interest thereon from the 11th June, 1891, at the rate of seven per cent. until paid. 4. That an adjudication can not now be made upon the encumbrance upon the property in Spartanburg, mortgaged to the bank by Jasper Miller and Noah J. Miller, held by the Atlanta and Charlotte Air Line Railway Company, but that such railroad company might set up hereafter any such claim as to whatever assets might remain from the sale of such Spartanburg property after its first application to the judgment or decree of the bank.

A decree in foreclosure was made by the Circuit Judge with great care and precision. From this decree, the firm of Miller Brothers have appealed upon thirty grounds of appeal. As these grounds of appeal will appear in the report of this cause, we will not reproduce them here.

First. It is contended that the Circuit Judge erred in holding that the certificates of stock in the Miller Batting and Manufacturing Company, of the Columbia Heights Land and Investment Company and of the Congaree Manufacturing Company, were pledged by Miller Brothers to the Loan and Exchange Bank of South Carolina in March, 1891, to secure the general indebtedness of such firm to such bank, and not upon an agreement by the bank to extend an additional line of credit to such firm. We have carefully examined the "Case," to see upon what testimony the Circuit Judge based his conclusion here assailed. There are two witnesses whose testimony is direct and positive that the firm made the assignment of these certificates to the bank to protect their indebtedness already subsisting, and that such assignment did not cover any new line of credit. There is only the testimony of one witness to the contrary. There can be no question that the parties to this

controversy were very much exercised as to the indebtedness of the firm to the bank at the time this assignment of stock took place.   Just a month before this date, the bank had paid $4,500 to obtain other stocks and bonds owned by this firm, in order to protect the firm's indebtedness.   It may be that Mr. Jasper Miller, who seems at the date of this transaction to have been subjected to unusual business annoyance arising from large shipments of cotton to a firm in New York, the sales of which had been delayed by a falling market, by interference by a suit for a few hundred dollars by a company in New York, and by other circumstances, has confounded this transaction with the bank with that proposed and refused by the bank in reference to a batch of securities deposited by the firm with the Carolina National Bank.   Under the well settled rule of this court in passing upon findings of fact made by a Circuit Judge, this court will not disturb such findings of fact if there be any testimony in its support, or unless it is against the manifest weight of the testimony.   This exception is, therefore, overruled.

Second. The next exception imputes error to the Circuit Judge in his finding of fact that Miller Brothers failed to apply the proceeds arising from the sale of cotton reported by that firm to the bank to be on hand, as was their duty under the chattel mortgage executed to them by the bank.   One of the terms of the said chattel mortgage was that all cotton owned by the firm was pledged to the payment of the firm's indebtedness to the bank, such cotton in bales in the warehouse of the firm or in the warehouses of the railroads or compress in the city of Columbia.   In November, 1890, the firm reported to the bank that it (the firm) had on hand 950 bales of cotton, and 16th December, 1890, 505 other bales of cotton.   These lots of cotton were shipped to a firm in New York for sale on account of the firm.   We are inclined to suspect the firm of Miller Brothers made a losing venture here. Their motives were pure, no doubt.   The bank contributed somewhat to the confusion in the minds of Miller Brothers and of the firm in New York by having Miller Brothers to do what is known as drawing approximate drafts in favor of the bank on the firm in New York to whom the cotton had been con-

signed by Miller Brothers. Jasper Miller so testifies, and the cashier of the bank, Julius H. Walker, does not deny it. We observe in the calculations of the value of this cotton as made at the instance of the bank's attorneys, while Jasper Miller was on the stand as a witness, that no allowance is suggested as to freight charges, insurance, commissions and costs in handling cotton in New York. This witness states as one of the results of these approximate drafts, his firm had to ship seventy-five bales of cotton to this New York firm to make up the difference between the excess of the approximate drafts over and above the amount realized from the sales of cotton. Another element of trouble between this firm and the bank, no doubt, was that the firm seemed to imagine that the day of settlement with the bank was postponed until their three notes maturing in 1891, one as late as 31st March, should become due. But after giving this firm credit for pure intentions, considerable scope as to the sales of cotton (because the chattel mortgage does not state where the sales shall be made, it only provides that the sales when made shall be applied to the payment of the firm's indebtedness to the bank), also, all the benefit arising from losses by drawing approximate drafts, still we feel that exact justice has not been accorded the bank by this firm in the matter of the sales of these two lots of cotton; at any rate, that this finding of the Circuit Judge is not against the manifest weight of the testimony, or without testimony in its support. This exception is overruled.

Third. The appellant alleges error in the Circuit Judge when he sustained the exception of the bank to that portion of the report of the master which disallowed the bank's claim for interest on all overdrafts from 9th June, 1890, at seven per cent. per annum, and thereby increased the demand on open account by the sum of $311.25. Just yet we will not discuss the matter of usury, as this subject will more properly arise when we consider the exceptions of Miller Brothers on that subject. While we agree with the Circuit Judge that interest to be adjudged usurious must be so pleaded—not by the use of that term, but by allegations of fact that raise such an issue—and that when the pleading is made of such

allegations of fact that will raise the question of usury, yet to entitle the party to the benefit of section 2 of the act of 1882, providing a forfeiture of double the amount of such usurious interest, a counter-claim must set up such claim in an action for the recovery of the sum loaned, or an independent action must be brought to recover such penalty. The firm of Miller Brothers having done neither in the case at bar, they cannot either avail themselves of the defence of usury or recover the penalty therefor. But it by no means follows that no interest can be charged. It is admitted that banks and their depositors sustain the relation of debtor and creditor. When a creditor sues a debtor for a sum, and the answer of the debtor denies the liability, the creditor is put to his proof of his claim. If by that proof he shows himself entitled to recover less than he claimed in his complaint, his judgment is restricted to the amount so ascertained. Here the creditor sued for eight per cent. interest on an open account. No written agreement to pay beyond seven per cent. interest was produced in testimony. No plea of usury was made. No counter-claim for excess of interest over seven per cent. What must be the result? The debtors did agree in writing to pay interest on their overdrafts, but failed to specify therein the rate of interest. In such an emergency the law supplies the rate—seven per cent. Such being the case, interest cannot be allowed at eight per cent., but should be allowed at seven per cent., as found by the Circuit Judge. This exception is overruled.

Fourth. This exception complains of error in Circuit Judge in holding that usury as a defence must be pleaded to be available as such. We agree with the Circuit Judge. Our reasons as stated in considering the third division of this opinion, is sustained by *Ex parte Monteith*, 1 S. C., 231.

*Fifth.* Our disposal of the third and fourth exceptions is an answer to this.

Sixth. We will consider the sixth and seventh exceptions together. Here the appellant suggests that the claims of the bank, on what is known as the "Reconcilement Sheet," were not proved. It will be remembered that only those items which did not correspond on the books of the bank

and on the books of the firm, or items which appeared on the books of the bank, but did not appear on the books of the firm, or *vice versa*, were entered on the "Reconcilement Sheet." At the hearing before the master, in nearly every instance, the bank, through its cashier, Mr. Walker, or its clerk, Mr. Cronenburg, or its former teller, Mr. Barnwell, introduced the original evidences of the indebtedness to the bank by the firm, consisting of checks, drafts, exchange, discount, and interest. These evidences were compared with their entry on the books of the bank. All this was done without objection by the attorneys for the firm. In addition, in the cross-examination of these witnesses by the attorneys for the firm, these witnesses were required to call from the books of the bank any and all items demanded of them, even extending the examination to the account, and the methods of the entries of items therein, of another firm of cotton buyers in no wise connected with the firm of Miller Brothers. Under these circumstances, we can see no ground for those exceptions. The findings of the master and Circuit Judge concur, as a matter of fact, in these findings of fact. So, under the rule of this court in such cases, and in view of the proofs themselves, we overrule these exceptions.

Seventh. We will now consider the eighth, ninth, and tenth exceptions, which relate to the same subject matter. The testimony of the officers of the bank, and of Jerome H. Sawyer, as cashier of the Central National Bank, and of Col. Wylie Jones, as cashier of the Carolina National Bank, established the custom of the banks in the city of Columbia with their customers who were cotton buyers, and specifically of such banks with the firm of Miller Brothers, to enter the checks of such cotton buyers, when not made upon funds already on deposit, as debits on such account on the day after checks were paid; that the amount of such checks of each day would be ascertained, and at the end of each month the aggregate of these daily balances would be found, and interest, at the prevailing highest legal rate for one day, on such monthly aggregate would be charged as the interest due by the customer so entered upon the bank's books, and so charged upon the pass book of the customer. Inasmuch as both in theory and in

practice, in the instance of this firm of Miller Brothers, drafts or exchange or cash would always be deposited during each month to their credit in the account of the bank, including charges for overdrafts and interest, and in every instance would more than pay any charge for interest, there could not be such a thing as interest being charged on interest, and, therefore, the same could not be said to be compounded. The master so found and the Circuit Judge concurred in such finding.

But it is also suggested in this connection by the appellant, that inasmuch as the interest on such monthly balances was charged at the rate of ten per cent. per annum until 1st November, 1889, when such ten per cent. was the limit beyond which persons or firms could contract to pay interest when such agreement was evidenced by a writing, or as the interest on such monthly balances, after the 1st November, 1889, were charged at the rate of eight per cent. per annum, which, by the act of 1889, was fixed as the limit of interest to be contracted upon agreements in writing, such charges were usurious and void. In our consideration of this last phase in the exceptions, we desire to state that we divide this subject into two classes: 1. When notes were given in settlement of the overdrafts; and 2. When no such note was given. There can be no question but that the attention of the legislature in this State has been fixed upon the evil of an excessive interest to be paid for the use of money. Prior to 1830, very severe penalties were imposed. Since 1830, the effort has been made to discountenance a greater interest than seven per cent. by forfeiting interest. However, to meet the demands of the times after the year 1865, that rule was so relaxed up to December, 1889, that if parties desired to pay interest beyond seven per cent, it was allowed if such willingness was reduced to writing. After December, 1889, the limit was reduced from ten to eight. Persons dealing with banks in the shape of overdrafts, knew the custom of the banks in this particular. So far, therefore, as a moral question between the bank and its customer, it is all right. When a demand is made by the bank for such interest, in accordance with that custom, the customer may either recognize his obligation or refuse to do so. If he recognizes his

obligation by giving his note, including such excess of interest, well knowing the fact, the law treats such writing as the performance of a previous contract to do that very thing, namely, to pay that excess of interest over the legal rate of seven per cent. per annum. It was in the power of these parties, under the law, to pay such excess of seven per cent.; they had verbally agreed to do so, and this note is by the law referred to the inception of their business transactions.

A distinction may be made between those cases where no such original agreement to pay interest over seven per cent. was entered into, and those where no agreement was made. So much, therefore, for instances where notes are actually given. But in the second case, relating to the absence of note including such interest, no excess of interest can be allowed, for the proposition to do so contravenes the plain mandates of the law. It makes no difference what the custom of the banks may be. They are as much subject to the law as private persons. To this effect, see the decisions of this court. *Gilliland* v. *Phillips*, 1 S. C., 156, and *Bank* v. *Parrott*, 30 *Id.*, 68. While, under this second branch of this subject, no greater rate of interest than seven per cent. can be charged on an open account for overdrafts, in the absence of an agreement in writing to pay more than seven per cent. interest, yet it does not follow that the defence of usury not pleaded will so operate. It is only through the enforcement of the law, that lays down the rule as to what interest is (to) be allowed when judgments are rendered upon a state of facts, such, for instance, as the absence of an agreement in writing to pay more than seven per cent. interest, that this result follows. The balances from overdrafts were entitled to bear interest, although debts on account, because Miller Brothers, in one of their mortgages to the bank to secure overdrafts, agreed to pay interest on their indebtedness to the bank. See mortgage of the firm to the bank. But such agreement being silent as to the rate, the law imports seven per cent., except in those instances when they contract in writing to pay a greater rate. These exceptions are overruled.

Eighth. The eleventh and twelfth exceptions raise the ques-

tion as to the effect of the making of the three notes for $10,000 each to the bank, so far as they include the excess of interest over seven per cent. on the account for over-drafts. We consider that, under the division *seventh* of this opinion, we have announced our views thereon. Hence we dismiss these exceptions.

Ninth. The thirteenth exception complains that the firm was not allowed double the amount of interest beyond seven per cent. on all overdrafts. As before stated in this opinion, we think that, under the decision of *Ex parte Monteith*, 1 S. C., 231, it is established as the law of this State, that the defence of usury must be pleaded. Such was not done in this cause. It follows that there was no error here.

Tenth. The fourteenth exception specifies the amount of $4,645.16 on the "Reconcilement Sheet" as made up of items of interest on overdrafts beyond seven per cent., to wit, ten per cent. till 1889, eight per cent. thereafter, and charges that such interest was usurious, in the absence of a written agreement, and that the same were compounded. We have endeavored, heretofore, herein to express our views on the subject of interest, so far as usury is concerned, and, also, as to such interest being compounded, and in such views we have overruled these propositions. We will do no more. Let the exception be overruled.

Eleventh. It is complained in the fifteenth exception, that the various items embraced in exhibit "Q" were not established. We have examined the testimony relating to those items with care. The master and Circuit Judge have passed upon the proofs as satisfactory. And we do likewise. The exception is overruled. *Twelfth.* The sixteenth and seventeenth exceptions point out about thirty items included in exhibit "Q" and the "Reconcilement Sheet" which the appellant suggests should not be allowed the bank as credits. We have bestowed unusual care upon the reading and comparing the testimony of the witnesses on each side of this controversy, on all these matters of difference, so that we might intelligently pass upon the findings of the master concurred in by the Circuit Judge. Candor compels us to say that it is a cause fully

proved.   In an account running for nearly four years, and in-
volving debits of about nearly two and a half millions, and
involving credits within about thirty-three thousand dollars of
the amount of the debits, that no more than an error of five
dollars should be found, is a marvel of accuracy, especially as
this only error arose from transferring to the books of the bank
the figures of a check where the figure 3 was mistaken for an 8.
This exception is overruled.

Thirteenth.  The eighteenth exception relates to a note for
$10,000, due on the 9th November, 1890, and charged to the
firm on the account of the bank on the 19th September,
1890.   How the appellant can make an entry of a note a
few months out of its order of maturity on the books of
the bank operate as a payment of such note, we cannot under-
stand.   There is no effort to show that such note was actually
paid.   The firm made and delivered the note to the bank,
which still holds the note.   Premature entry of a note on the
account by the bank on its books does not operate as a payment
unless such note is actually paid with money or money's worth.
If actually paid, no matter when and how the bank might
enter such note, it would be no longer a subsisting evidence of
indebtedness.   The exception is overruled.   *Fourteenth.* The
nineteenth exception, relating to the note covered by the *thir-
teenth* division of this opinion, cannot be sustained.   The testi-
mony submitted as to this matter showed conclusively that
there was no double liability therefor to the bank.

Fifteenth.  We will now consider the twentieth exception.
Herein is embodied a nice question of construction of written
papers.   When the plaintiff's complaint is read, it will
be seen that it distinctly alleges that the indebtedness of
Miller Brothers consists of three notes of $10,000 each,
and of an open account for $2,533.93.   When the answer is
made, it contains a denial of this indebtedness, as alleged, and
sets up that on account of differences between that firm and the
bank, an account has been prepared of the differences between
them, to be known as the "Reconcilement Sheet," as we have
hereinbefore explained, and that it had been agreed between
the parties, that in the event an amicable settlement could not

be made between them, the court should adjust such differences and all others growing out of the pleadings. The parties, after this answer had been made, agreed to an order of reference to the master for Richland County, whereby such master was to take the testimony and state the accounts in all matters at issue between the parties, and make report on the same to the Circuit Court. The master took the testimony on all the issues in the action, and in the accounting before him took such accounting as embraced in the allegations of the complaint, the "Reconcilement Sheet" and in other particulars connected with the bank's account against Miller Brothers. It is now contended that in such accounting before the master, he should have been restricted to the differences between the parties as shown by the items on the "Reconcilement Sheet," whereas, in his report he has embodied the whole account between the bank and Miller Brothers. The Circuit Judge evidently considered the master's report as confined within its legitimate bounds. This is now imputed as error to the Circuit Judge. If the parties to the order of reference had intended to restrict the master in any respect, they should have so spoken at the time by the language used in the order of reference. It seems to us that when the master was called upon to decide what the parties meant, he must of necessity deduce their meaning from a construction of the language of the order of reference. When we scrutinize those terms, we see that the master was required to "state the accounts in all matters at issue between the parties" to the cause. Now what account was at issue between these parties? Clearly all matters embraced in the pleadings. What was embraced in the pleadings? Just what we have before stated. This being so, we cannot agree with the appellant as to this exception, and it is, therefore, overruled. *Sixteenth.* It follows, from what we have just held in the fifteenth division of this opinion, that the twenty-first exception must be overruled; and also that the twenty-second is not tenable. Both are overruled.

Seventeenth. We have examined the testimony bearing upon the matters embraced in the twenty-third exception, which raises the question as to what effect should be given to

the making of the two notes on the 9th June, 1890, aggregating $16,000. We are entirely satisfied that the purpose had at that time in making the notes was a settlement of the open account of the firm with the bank. It was at the close of what is known as the cotton season—that is, those months of the year when buyers handle the staple, beginning in September of one year and ending in May of the next year—and it was, therefore, perfectly reasonable that a balance should then be struck, and that balance settled either by payment or by note.[1] This exception is overruled.

Eighteenth. With reference to the three notes for ten thousand dollars each, referred to in the twenty-fourth exception, the testimony is convincing that such notes were given because the bank had already paid to them the money represented by the face value of each. It is idle to talk of a note given for an indebtedness previously subsisting being without consideration. This exception is overruled.

Nineteenth. As to the twenty-fifth exception, it seems to us there is some merit in it. Not that the master erred in the scope and order of reference to him, requiring him to include the three notes; for, as we have previously held, in this he did right. But we are not satisfied with the results as to the amounts found due on these notes by the Circuit Judge. The complaint demands judgment thereon in this language: "For the sum of thirty thousand dollars, with interest at eight per cent. per annum on two thousand from the 3d of March, 1891; on ten thousand from 18th March, 1891; on two thousand from 31st of March, 1891." * * * The proofs showed that these three notes for ten thousand dollars each matured on 3d March, 1891, 18th March, 1891, and 31st of March, 1891,

---

[1] On 9th June, 1890, balance due by Miller Brothers to the bank on overdraft account was.................................................................. $16,599 85

They deposited that day:

| | | |
|---|---|---|
| Draft for $1,025.36, netting.................................... | $1,016 03 | |
| Note for $10,000, netting..................................... | 9,860 00 | |
| Note for $6,000, netting...................................... | 5,956 00 | 16,832 03 |
| Balance to credit.............................. | | $157 21 |

respectively. Under the Code, it was competent for the master and Circuit Judge to have the judgment conform to the facts proved. Therefore, the master's estimate of their value on the 21st April, 1892, to be $32,633.30, is approved. But the Circuit Judge, only a few months after the master's report, decrees that these three notes amount at the date of his decree (August 23d, 1892) to $35,833.30, a difference of $3,200. This calculation of the Circuit Judge must be reformed, so that the judgment of the plaintiff on these three notes shall be for the sum of thirty-two thousand six hundred and thirty-three dollars and thirty cents, with interest thereon at seven per cent. per annum from the 21st day of April, 1892, as found by the master.

Twentieth. We will next consider the twenty-sixth exception. To arrive at a just view of the matters embraced in this exception, a brief statement of the facts may be necessary.

When the bank and Miller Brothers agreed to compare a statement made up from the books of that firm with the books of the bank, of all items of debit and credit beginning on the 23d day of November, 1887, and ending in May, 1891, comprising the whole period in which these transactions occurred, the statement made up by Miller Brothers was known as *A. O.* [exhibit to testimony], and was compared, item by item, with the books of the bank, and every item that appeared on each was checked on each; we mean by "on each" on A. O. and on the books of the bank. All the differences as to items appeared by an entry of such items of difference on the "Reconcilement Sheet." It does appear that the totals of items on the statement A. O., and the totals by the books of the bank, of all the items that were the same on each, footed up an aggregate of $13,713.17,[1] at the time this settlement of accounts was in the hands of the two accountants, McCants and Walker, in August, 1891, as the amount due by the bank to Miller Brothers, outside of and not taking into account any items on the "Reconcilement Sheet." Inasmuch as the "Reconcilement

[1]That is to say, a balance in favor of Miller Brothers, the three notes for $10,000 each having been credited.—REPORTER.

Sheet" had debits and credits of Miller Brothers and also debits and credits of the bank, it will be seen that when a balance is struck between these two parties as to such debits and credits, and such balance on the "Reconcilement Sheet" is compared with the balance already previously obtained of $13,713.17, it is easy of ascertainment what is the amount of indebtedness *by account* between Miller Brothers and the bank. This is the plan which has been pursued by the master.

But appellant objects to this because no regard was paid by the master to the statement A. O., so far as its totals were concerned. The reason offered by the master was this: After the accountants had finished their work, in the summer of 1891 (August), this statement *A. O.* was turned over by Mr. Mc-Cants—their representative accountant—to Miller Brothers. That firm of their own will placed the statement A. O. in the hands of Mr. Winthrop Williams as an expert. He made changes in the totals and alteration of items, so that at the time it was brought, in 1892, before the master, there was a difference in the totals of at least $16,000, as testified to by Mr. Walker. On one page an error of $11,000 in the additions was made to appear. The master refused to consider these totals. He did exactly right. While no positive imputation of unworthy motives in the firm of Miller Brothers in placing this paper in the hands of another accountant, or of impropriety in the conduct of such accountant, is intended, yet we do say that all the changes in such statement were made through agencies set on foot by Miller Brothers, and because such changes render that statement no longer trustworthy, still that firm cannot escape the effect of the admission, established by papers they admitted to be correct in 1891 (August), that their claim against the bank, independent of the "Reconcilement Sheet," amounted to $13,713.17. What effect would a new accounting have? It could not change the addition of columns of items the same to-day as in 1891, when the additions were first made. We concur with the finding of the master and the Circuit Judge in these matters. *Twenty-first.* Our previous conclusions are an answer to the twenty-seventh exception. *Twenty-second.* The

conclusions announced by us in the twentieth division of this opinion are a full answer to the twenty-eighth exception.

Twenty-third. We do not think it was incumbent upon the master to delay the reference before him until Miller Brothers could correct the more than 240 sheets of settlement A. O., so that it might be used at the trial of these issues. It was a useless expense of time. The bank had in no wise contributed to this disarrangement of the items and totals on settlement sheet A. O. Of course, if any harm would have resulted from the course pursued, the delay might have been explained. But no such harm has been shown as the result of this course. The exception is overruled.

Twenty-fourth. Conclusions hereinbefore announced are a sufficient answer to the thirtieth exception. It is, therefore, overruled.

It is the judgment of this court, that the judgment of the Circuit Court be modified, as to the amount due on the three notes, by inserting $32,633.30 in lieu of $35,833.30, and that interest be allowed on the amount substituted by this judgment at the rate of seven per cent. per annum from the 21st day of April, 1892; and further, that the judgment of the Circuit Court be modified by inserting $2,370.18, in lieu of $2,325.75, as the amount due on the open account for overdrafts, and that this sum so substituted bear interest at the rate of seven per cent. per annum from the 21st day of April, 1892; but that in all other respects the judgment of the Circuit Court be affirmed.