12215

FARMERS' & MECHANICS' BANK v. McNAIR *ET AL.*

(148 S. E., 54)

*Messrs. R. E. Whiting* and *D. Gordon Baker,* for appellant,

*Messrs. P. H. Arrowsmith, S. J. Royall, McNeil & Oliver,* and *Henry E. Davis,* for respondent,

April 30, 1929.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

The respondent, the Farmers' & Mechanics' Bank, has filed a petition for a rehearing, and a petition has been presented also by the appellant Smith, administrator, to revise the opinion written by Acting Associate Justice Purdy in respect to the finding that the mortgage debt, which was the subject for the action for foreclosure, has been paid.

The plaintiff bank did not appeal from the decree of Judge Mann, and therefore has no standing before this Court to be heard in respect to the matters upon which the petition for a rehearing is requested. Smith, administrator, appealed upon various exceptions. These raised two main questions:

(1) Was the judgment in favor of the bank against the administrator within the purview of the proceedings?

(2) Was the finding warranted that the mortgage of Mrs. McCall to the bank had been fully paid and should have been canceled?

The first question was decided in the opinion written by Acting Associate Justice Purdy in favor of the appellant. The second question was an issue primarily between the bank and McNair, the owner of the mortgaged property. The decree of foreclosure which had been sought by the bank had been refused by the Circuit Judge, and the bank had not excepted to the ruling. As the appeal from the judgment rendered in the case had already been decided in favor of the administrator upon other grounds, the exception of the administrator upon what appeared to be a somewhat collateral matter was disposed of by affirming, without discussion of the testimony, the finding of the Master and Circuit Judge that the mortgage debt had been paid.

The point is now made, however, by the petition to revise the opinion, that the appellant, administrator, is interested in the question, and a more thorough review of the matters involved in this ruling is sought.

A fair statement, rather than an argumentative presentation of facts, is the sound basis of judicial decision. We shall

therefore, briefly, review the transactions under which the claim of payment arises.

The action for foreclosure was predicated upon a note and mortgage made by Christiana McCall to the plaintiff bank, of date October 28, 1912, in the amount of $11,217.18. The maturity date of this note was December 2, 1912, but was extended by indorsements appearing on the back of the original note to December 15, 1913. The record does not show that any entries of credits, other than the interest payments for this extension period, were made on either note or mortgage. There is, moreover, no testimony appearing on the record to show the method of handling this item between December 15, 1913, and January 6, 1915; but in what is called the "note tickler" of the bank, for the 6th of January, 1915, there appeared the following entry:

| Date No. | Maker. | Securities. | Rate. | P.O. | Amt. |
|---|---|---|---|---|---|
| Dec. 21 | Christiana McCall | R. E. Mortgage | 8 | Here | $4717.18 |
| | | Paid by J. W. Ragsdale 1–6–15 | | | |

A deposit slip of the same date, January 6, 1915, showing that a note of Mrs. McCall for $5,000 was discounted that day by Mr. Ragsdale, and the net proceeds thereof, amounting to $4,875, deposited to his credit, was introduced in evidence. The plaintiff bank also introduced in evidence a written instruction of the same date signed by Mr. Ragsdale to carry this $5,000 note of Mrs. McCall to March 28, 1915.

On April 24, 1915, W. V. McCall, the husband of Mrs. Christiana McCall, acting as her agent and attorney in fact, had a conference with Mr. Ragsdale in the president's room of the Farmers' & Mechanics' Bank to have an adjustment of accounts and claims arising out of transactions between Mrs. McCall, Mr. Ragsdale, and the bank. As a result of this conference an agreement of settlement was reached as follows:

"Whereas a full and complete account was made this day between Christiana McCall and J. W. Ragsdale by the undersigned W. V. McCall attorney in fact of the said Christiana McCall, by which it appears that the said Christiana McCall is now indebted to the said J. W. Ragsdale, for payments and settlements heretofore made by him in her behalf, it has been mutually agreed by and between the said J. W. Ragsdale and the undersigned W .V. McCall, as attorney in fact of the said Christiana McCall, that as full and final settlement thereof, the said Christiana McCall shall make and duly execute a full warranty deed to the said J. W. Ragsdale of all the property described in the undelivered deed heretofore made by her to J. W. Carey, the same being valued in this settlement at $3,000.00,. and shall also make her promissory note in the sum of two hundred and fifty ($250.00) dollars endorsed by the undersigned W. V. McCall, payable to the order of the said J. W. Ragsdale on November 15, 1915, with interest from date and after maturity at the rate of 8 per cent. per annum, the said deed and note to be accepted by the said J. W. Ragsdale in full settlement of all claims and demands against the said Christiana McCall."

The agreement was signed "W. V. McCall, Attorney in Fact for Christiana McCall." An objection was raised, which was sustaind in the Master's report, to its introduction, upon the ground that the evidence of McCall's authority to act as attorney in fact was not produced. The ratification of this agreement by Mrs. McCall was, however, sufficiently complete, as will hereafter appear; and therefore the agreement of settlement came properly before the Court.

In the testimony of R. E. Whiting, Esq., a member of the Florence bar, who was then associated with Mr. Baker, but who had formerly been a law partner of Ragsdale, and who was called in by him to draw up the memorandum of settlement, there appears a statement that Mr. Ragsdale agreed to accept this deed and a note for $250, and that he would take up the mortgage to the bank and close up all matters in which Mrs. McCall was interested. The deed referred to in the

settlement agreement, containing full covenants of warranty of the title to the Carey tract, was duly executed by Mrs. Christiana McCall of date April 26, 1916, and on the same date was probated before the deputy clerk of Houston County, in the State of Georgia. This, together with her note for $250, was sent to Ragsdale in a letter from W. V. McCall written from Perry, Ga., of date May 1, 1915.

At the time of the execution by Mrs. McCall of the deed to Ragsdale, notwithstanding her warranty of title which is contained therein, she no longer held the lots which were covered by the deed, having previously conveyed them to her brother, F. C. McCormick, to apply on an account which she owed him.

After the discovery by Mr. Ragsdale of the prior conveyance by Mrs. McCall to McCormick, six months before her conveyance of the same lots to him, the McCall paper held by the bank was permitted to remain as it stood prior to the settlement agreement. Demand was made on McCormick to release his claim of title. This was not done, and, on October 14, 1916, McCormick conveyed the lots, which still appeared of record as being covered by the mortgage, to McNair, the defendant in the present action.

There is moreover the added circumstance that the bank had not released the mortgage either by any entry of satisfaction thereon or by surrender of possession. In the testimony of Mr. Pettigrew, assistant cashier of the Farmers' & Mechanics' Bank, there appears the following:

"Q. The bank never at any time surrendered the mortgage? A. No, sir.

"Q. The bank still had the mortgage unpaid? A. Yes, sir; the bank absolutely owns the mortgage."

"Q. There is now due the bank the amount shown by this last entry (Exhibit I), and this amount has never been paid by Mr. Ragsdale or any one else and that is the amount of the indebtedness? A. Yes, sir; absolutely."

It does not appear from the record that either McNair, the defendant, or McCormick, under whom he claims, had

ever made any inquiries of the bank to ascertain its rights under the mortgage. McNair did not testify; and the incompetency of McCormick's testimony, which he had given concerning the matters handled with Mr. Ragsdale for Mrs. McCall, was brought out by the following cross examination:

"Q. Did you ever have any conversation with Mr. Ragsdale about this matter? A. No, sir.

"Q. At any time? A. I never spoke to Mr. Ragsdale in my life—never saw him to know him that I know of.

"Plaintiff's counsel moves that witness' testimony as to the agreement between Mr. Ragsdale and Mr. and Mrs. McCall all be stricken out on the ground that it appears to be entirely hearsay.

"Q. Mr. McCormick, was this property listed by you as an asset in the bankruptcy mentioned? A. I sold it before I went into bankruptcy."

No testimony is available to show the situation in reference to the mortgage debt other than the bookkeeping entries of the bank, as explained by Mr. Pettigrew, and the settlement agreement, as ratified by Mrs. McCall. Payment is an affirmative defense which rests upon the defendant to establish. An inquiry into the condition of accounts between Mrs. McCall and Mr. Ragsdale, in relation to the matters handled by Mr. Ragsdale, would not afford the proof required to show payment of the mortgage held by the bank. Nor would it seem to have any proper evidentiary value. The only question is whether payment had ever been made to the bank of the balance due on the mortgage debt.

In any event, the data obtainable for such accounting at the trial of the case—years after the transactions in question, after the affairs of the bank had been taken over by another bank, and after it had become impossible through Mr. Ragsdale's death for him to speak in explanation of his handling of such matters—would have been far less likely to reflect the truth than the accounting, which was intended as final and conclusive, that was had in the conference resulting in the settlement agreement. All points of difference were there

discussed, examined, and passed upon; and, after making allowance for the purpose of friendly settlement of all contentions presented by Mr. McCall, there remained an admitted indebtedness owing by Mrs. McCall which was several hundred dollars greater than the value placed on the lots now in controversy.

Under these circumstances we now come to the consideration of the question whether the payment of the mortgage to the bank is established by the bookkeeping entries for January 6, 1915.

There must be kept in mind the statement made by Pettigrew, the assistant cashier of the bank, that the notation of payment made on the note tickler did not mean that the mortgage held by the bank as security had been paid, and there is also his testimony that the bank had at no time surrendered the mortgage and still held it unpaid. So the net result of the bank's transaction of January 6, 1915, was that Mrs. McCall's note for $5,000 was carried on the books of the bank in place of the item of $4,717.18, which had previously been carried. The one item was taken out and the other was put in as a part of the same transaction. The bank still held the original mortgage on April 26, 1915, when Mrs. McCall ratified the agreement of settlement previously signed by her husband and made the deed to Mr. Ragsdale of the mortgaged property.

It has been a common, although not perhaps a commendable, practice among our banks (of which this Court may properly take judicial notice), that upon the taking of renewal or collateral form notes, the bank retains in possession the original note and mortgage with the intention of keeping them alive and unsatisfied as security for the balance of the debt owing to the bank. Sometimes renewal note after renewal note will be given; but while the renewal notes are marked "paid" and surrendered as they are replaced with other notes, the original papers are held unsatisfied until payment is finally made in cash, or a new and more acceptable security is given by the debtor.

It may be noted that the item carried on the note tickler for January 6, 1915, does not correspond either in date or amount with the original Christiana McCall note and mortgage, which was of October 28, 1912, and in the amount of $11,217.18. The inference might reasonably be drawn from this that a renewal or collateral form note had been given with the original papers held as security. The note tickler entry, however, fixes the balance of the debt secured by the mortgage in the amount of $4,717.18; and for this amount only could the mortgage be held as security.

The bank, continuing to hold the original note and mortgage, now discounted the $5,000 note. Mrs. McCall's personal obligation to the bank was for the amount of the new note; but the security of the mortgage if held as collateral would only extend to $4,717.18, which remained unpaid on the mortgage on January 6, 1915. This must be regarded as the amount of the debt secured by the mortgage; and this indebtedness to the bank has never been paid, unless in the discount of the new note the bank intended to satisfy the mortgage debt and to release the security of the mortgage.

It seems quite evident from the testimony of Mr. Pettigrew that the notation made on the note tickler was only intended for the bokkeeping purpose of the bank, and was not intended as a release of the mortgage; for in whatever form the McCall loan was handled, either before or after January 6, 1915, her debt was still carried by the bank ,which continued to hold her original note and mortgage as a subsisting obligation for its protection.

The position taken by appellant that payment cannot, under such circumstances, be inferred from the discounting of the new note, is abundantly supported by the authorities. Among the many citations leading to this conclusion is the following from the opinion of Mr. Justice McIver in *Adger & Co. v. Pringle,* 11 S. C., 527: "The rule of law is well established that where a creditor takes an obligation of inferior or equal rank, it does not extinguish, *ipso facto,* the

prior obligation, *as that only is payment which is intended and accepted as payment.* \* \* \* *And the burden of proof is upon him who asserts the fact that the new bond was taken in payment.*" (Italics added.)

Similarly, in 29 Cyc., 1134, it is stated: "The question is always one of intention, *and a mere change in the amount of the debt, the terms and mode of payment, the rate of interest, or the nature of the securities does not effect a novation,* unless the intention of the parties to novate the obligation is clearly shown." (Italics added.)

In giving application to these principles in *Loan & Exchange Bank v. Miller*, 39 S. C., 175, 17 S. E., 592, the comment was made by Mr. Justice Pope that an entry by a bank on its books *"does not operate as a payment unless such note is actually paid with money or money's worth."* This is the principle which we believe should govern the consideration of the present case. Mrs. McCall's mortgage was not paid by her, either with money or money's worth; and, so far as we can discover from our examination of the record, there is no basis for the assumption that the bookkeeping entry appearing on the note tickler of the bank was intended to signify the acceptance or substitution of a new or different obligation in place of the obligation secured by Mrs. McCall's mortgage, which the bank still continued to hold as its property.

It is argued, however, that the written memorandum of the settlement agreement contains no reference to any other debt than what was owing to Mr. Ragsdale, and that it is hardly reasonable to suppose that he would have assumed the payment of the outstanding obligations of Mrs. McCall to the bank without an express agreement to that effect. The answer to this is that note of Mrs. McCall had been discounted by Ragsdale. It was with the bank. Her mortgage on the property, which was to be conveyed to Ragsdale, was also held by the bank. The settlement agreed upon, in order to be effective and to convey title to Ragsdale, was thus necessarily based upon the assumption of the payment of Mrs. McCall's obligation to the bank. As she could not convey a good

title, in accordance with the terms of the agreement, the situation of the parties was left as it was before the agreement was made.

It follows, from the adjudication that the mortgage has not been paid, that there is no foundation for the judgment of the bank against Smith, administrator. The decree of the Circuit Judge is therefore reversed upon both grounds.

The bank not having excepted to the finding of the master, confirmed by the circuit decree, to which also it did not except, that the mortgage has been paid, is concluded thereby; this necessitates a dismissal of the complaint.

The opinion heretofore filed by Mr. Acting Associate Justice Purdy is withdrawn, and this opinion is substituted in its place.

The judgment of this Court is that the judgment of the Circuit Court be reversed and the complaint dismissed.

Let the remittitur be stayed for the usual period allowed for the filing of a petition for a rehearing.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES COTHRAN and STABLER and ACTING ASSOCIATE JUSTICE PURDY concur.